IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KENNETH WAYNE LAUNZA, JR. | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:20-cv-01710-E (BT) |
| | § | |
| CITY OF MESQUITE, et al. | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

*Pro se* Plaintiff Kenneth Wayne Launza Jr. filed this civil action under 42 U.S.C. § 1983 against various Defendants related to his arrests for—and subsequent convictions of—failure to identify and resisting arrest, search, or transportation under Texas law. The Court granted Launza leave to proceed *in forma pauperis* but withheld issuing service pending judicial screening. (*See* ECF No. 3.) For the reasons that follow, the Court should dismiss Launza's complaint under 28 U.S.C. § 1915(e)(2)(B) as frivolous or, alternatively, for failure to state a claim upon which relief can be granted.

**Background**

Launza's complaint initially includes a series of allegations that appear to be based on the so-called "sovereign citizen" ideology. *United States v. Weast*, 811 F.3d 743, 746 n.5 (5th Cir. 2016) ("The sovereign citizen movement is a loose group of litigants, commentators, and tax protestors

1

who often take the position that they are not subject to state or federal statutes and proceedings."). For example, Launza notes that he is going to change his legal name because he "does not consent to it." (*See* ECF No. 3 at 2.) He associates his "sanity" instead with Sanoaman Sedago Leae. (*Id.*) He also states that, while he consents to the government, he does not consent to "people acting as government, using my government to govern my freedom and any of my other property beyond my consent." (*Id.* at 3.) He states further: "I am not a subject. I am a sovereign." (*Id.*) Launza claims that he goes to jail every year because of fictitious things to which he does not consent and that artificial rules and regulations beyond his consent do not apply to him. (*See id.*) He opines that "[i]f government can control my freedom beyond my consent, then that makes me a slave to government." (*Id.*)

Launza also includes a myriad of substantive allegations stemming from an encounter with a City of Mesquite Police officer, Defendant Lijin John, on June 27, 2018. Specifically, Launza alleges that, at around 2:00 a.m. on June 27, he drove to Mesquite after work to exercise at a 24-hour fitness club at which he had a membership. (*Id.* at 4.) Launza was homeless at the time. (*Id.*) As he entered the parking lot, he noticed a police vehicle parked behind the building. (*Id.*) Launza parked his vehicle in the spot furthest from the gym, which was the first spot that he saw, and turned his car off. (*Id.*) While changing, he noticed the police vehicle moving towards

his. (*Id.*) Launza grabbed his cell phone and began to record what he "knew was going to be a verbal engagement between the police officer and [himself]." It was Launza's "intent to verbally engage with the police officer because [he] wanted to talk to the officer about [his] issues and concerns by protesting [the officer's] actions." (*Id.*) Launza recounts the entirety of his interaction with Defendant John. In pertinent part, the account reads as follows:

> At the time I started recording the video I was still sitting in my driver seat, and John was sitting in the driver seat of his vehicle.
>
> When I realized that my camera was recording, I asked John if he needed something.
>
> John responded 'what's up' [sic]?
>
> I said, 'you need something?'
>
> John said 'no.'
>
> I then told John he was running my plates without justification.
>
> John told me he can run my plates anytime he wants.
>
> I told John to come over to me.
>
> John said 'what.'
>
> I told John to go ahead and come over to me.
>
> John told me he doesn't need to.
>
> At this time I was going to get out of my car to talk to John face to face or at least closer than we were because I wanted to, but I knew I did not have my shoes on.
>
> I reached down and put my shoes on my feet.

While I was putting my shoes on my feet, I asked John to go ahead and dispatch his supervisor.

After I put my shoes on, I then exited my vehicle to talk with John.

As I was getting out, I realized John was getting out of his vehicle.

John told me that he couldn't hear me.

I was completely out of my vehicle.

I then asked John, as we approached one another, what his name and badge number was.

John responded with his name only.

I then asked John for his badge number.

John told me his badge number.

I told John to get his supervisor here.

John said, 'for what?'

I told John it was an order and that I did not ask him to try and debate about it.

John responded, 'it's an order.'

I asked John again to get his supervisor here.

John then asked me to do him a favor and get back in the car and he would call his supervisor.

I asked John if he was ordering me to get in my car.

John told me for his safety and my safety to get in the car.

I asked John again if he was ordering me to get in my car. John told me again to get in my car.

I asked John if he was going to place me under arrest if I didn't get in my car.

John responded, 'just get in the car.'

I then began to talk directly to my camera as I was recording (vlogging) expressing what I was wearing, where I was standing among other statements.

I then told John that I need him to go ahead and get his supervisor again.

John asked me if I had a 24-hour membership.

I remained silent to John's question directly.

I told John if he doesn't want to get the supervisor there then I will get the supervisor there myself.

John told me to get in my car as I was reaching towards the inside of my left front windshield for my other phone.

The phone was attached to a window phone retainer.

As I was turning towards my car [sic] he pointed a flashlight at me while he made his last statement.

I grabbed my second cell phone and turned to face John again.

I stood in place while trying to turn on my second phone.

John kept the flashlight pointed at me when he initially turned it on.

After a few seconds when I turned to face John, he turned off the flashlight.

I told John that I never got his badge number.

I became interested in John's vehicle number.

> I took some steps towards John's vehicle to get his [sic] the unit number on his vehicle and came back to the original position where I was standing while engaging with John.
>
> I asked John if he was recording the video.
>
> He responded 'yes' and that he was recording audio and video.
>
> I responded, 'that's good to know.'
>
> I then made a statement 'just gone pull up to my motor vehicle and run my plates as if you got justification.'
>
> I told John I like his confidence.
>
> John said, 'that's fine man, I'm just gonna pat you down to see if you got any weapons.'
>
> As John was making this statement, he took some steps towards me and grabbed by body.
>
> This is when John began to assault me.

(*Id.* at 5-7.) Launza informed John that he could not pat him down without justification. (*Id.* at 7.) John and Launza tussled. (*Id.*) Other officers arrived. (*Id.*) Both John and another officer had hands on Launza and ordered him to the ground, face down. (*Id.*) Another officer grabbed Launza's phone and threw it, cracking the screen and destroying the phone. (*Id.*) After restraining Launza, the officers searched his pockets. (*Id.*)

John then had a conversation with his "partner" about what happened, which Launza recounts as well. (*Id.* at 8.) According to John's description of the incident to his partner, Launza exited the vehicle despite John's instructions to stay in the vehicle. (*Id.*) Launza then ordered John to

6

get back into his car and started recording the interaction. (*Id.*) John then informed Launza that, if he was going to exit his vehicle, John would need to pat him down. (*Id.*) Launza, however, resisted and would not let John frisk him. (*Id.*)

John then authored a "false police report." (*Id.* at 12.) Launza specifically questions the veracity of several statements in the report. John ultimately arrested Launza for failure to identify and for resisting arrest, search, or transportation. *See* TEX. PENAL CODE ANN. §§ 38.02, 38.03.[1]

The rest of Launza's complaint details why he believes that Defendants' actions were unlawful. Again, Launza maintains that "rules and regulations" to which he does not consent do not apply to him and cannot

---

[1] In pertinent part, the failure to identify statute provides that:

> (a) A person commits an offense if he intentionally refused to give his name, residence address, or date of birth to a peace officer who has lawfully arrested the person and requested the information.

TEX. PENAL CODE ANN. § 38.02. And the resisting arrest, search, or transportation statute provides in pertinent part that:

> (a) A person commits an offense if he intentionally prevents or obstructs a person he knows is a peace officer or a person acting in a peace officer's presence and at his direction from effecting an arrest, search, or transportation of the actor or another by using force against the peace officer or another.

> (b) It is no defense to prosecution under this section that the arrest or search was unlawful.

*Id.* at § 38.03.

serve as the probable cause necessary to execute a lawful arrest. (ECF No. 3 at 9.) Launza also takes issue with the Mesquite Police Department's training—specifically its alleged failure to train its officers when a weapons frisk is justified pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968), and its alleged failure to train its officers to ask for consent before charging a citizen like Launza with "an artificial claim against his freedom." (*Id*. at 9, 13.)

As for the court process, Launza challenged the resisting arrest, search, or transportation charge on jurisdictional grounds, but the judge overruled his objection. (*Id*. at 13.)  Launza notes that the prosecution played "body camera video" in both trials, that the "prosecution heard the lies directly from John," and that the jury convicted him after seeing this evidence. (*Id*. at 14.)  Launza claims that he was "wrongfully convicted" on September 6, 2018, for failure to identify and on June 3, 2019, for resisting arrest, search, or transportation. (*Id*.) He brings this suit against John, as well as four "unknown, unnamed police officers" in their individual and official capacities. (*Id*. at 1.)

## Legal Standards

Under 28 U.S.C. § 1915(e), a district court may summarily dismiss a complaint filed *in forma pauperis* if it concludes the action is: (1) frivolous or malicious; (2) fails to state a claim on which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). A complaint is frivolous when it "lacks an arguable

basis either in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A court may dismiss a complaint as frivolous when it is based on an indisputably meritless legal theory or when the factual contentions are "clearly baseless." *Denton v. Hernandez*, 504 U.S. 25, 32 (1992). The latter category encompasses allegations that describe "fanciful, fantastic, and delusional" scenarios, or that "rise to the level of the irrational or the wholly incredible." *Id.* at 33. To state a claim upon which relief may be granted, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face[,]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level . . . ." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasoned inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).

### Analysis

A.     <u>To the extent asserted, Launza's sovereign citizen claims are frivolous.</u>

As noted, Launza's complaint contains several allegations suggesting that the basis for Defendants' liability is their failure—evidenced through searching, arresting, and convicting him of criminal charges under Texas law—to recognize his sovereign citizen status. If the basis of Launza's complaint is his status as a so-called sovereign citizen, his claims should be dismissed as frivolous. *See, e.g., Watson v. Texas State Univ.*, 829 F. App'x

686 (5th Cir. 2020) (per curiam) (affirming dismissal of claims based on legal theories associated with sovereign citizen movement as "frivolous" and "entirely without merit"); *Westfall v. Davis*, 2018 WL 2422058, at *2 (N.D. Tex. May 4, 2018), *rec. accepted*, 2018 WL 2414794 (N.D. Tex. May 29, 2018) (noting that "[s]overeign-citizen legal arguments . . . are indisputably meritless.").

B.    Launza's claims against the Mesquite Police Department should be dismissed because the Mesquite Police Department is a nonjural entity.

Alternatively, Launza's claims fail even if not premised upon a sovereign citizen theory.

Initially, Launza's claims against the Mesquite Police Department should be dismissed because the department is a nonjural entity. A plaintiff may not bring a civil rights action against a servient political agency or department unless such agency or department enjoys a separate and distinct legal existence. *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313-14 (5th Cir. 1991). A governmental department cannot engage in litigation "unless the true political entity has taken explicit steps to grant the servient agency jural authority." *Darby*, 939 F.2d at 313. As this Court has repeatedly recognized, a city police department is not a jural entity subject to suit. *See, e.g., Garcia v. Dallas Police Dep't*, 2013 WL 5433502, at *2 (N.D. Tex. July 1, 2013), *rec. accepted*, 2013 WL 5434165 (N.D. Tex. Sept. 27, 2013); *Thomas v. City of Mesquite*, 2011 WL 2622339, at *2 (N.D. Tex. June 1,

2011), *rec. accepted*, 2011 WL 2624151, at (N.D. Tex. July 5, 2011) (dismissing claim against Mesquite Police Department as nonjural entity).

C.   Launza's allegations fail to state a failure to train claim.

Launza also alleges that the City of Mesquite is liable for failure to train its officers regarding search and arrest tactics, specifically the standards guiding the permissible use of the *Terry* stop and sometimes-accompanying weapons frisk, and for failing to train its officers to ask for consent before arresting citizens.

To establish a claim for municipal liability under § 1983, "a plaintiff must show the deprivation of a federally protected right caused by action taken 'pursuant to an official municipal policy.'" *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). "A plaintiff must identify: '(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom.'" *Id.* at 541-42. (citing *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)) (further citation omitted).[2]

---

[2] Launza, in addition to suing the City of Mesquite, sues all Defendants in their individual and official capacities. But a claim against a municipal officer in his or her official capacity is tantamount to a suit against the municipal entity. *See Monell*, 436 U.S. at 690. "Thus, when a plaintiff asserts claims against both the municipal entity and a municipal official in his or her official capacity, the Court can dismiss the official capacity claim as 'redundant' to the municipal-entity claim." *Bustillos v. El Paso Cnty. Hospital Dist.*, 226 F.Supp.3d 778, 789 (W.D. Tex. 2016) (citation omitted).

"The failure to train can amount to a policy if there is deliberate indifference to an obvious need for training where citizens are likely to lose their constitutional rights on account of novices in law enforcement." *Peterson v. City of Fort Worth*, 588 F.3d 838, 849 (5th Cir. 2009) (citing *Brown v. Bryan Cty.*, 219 .3d 450, 458 (5th Cir. 2000)). To bring a failure to train claim, "the plaintiffs must show: (1) the City's 'training policy or procedure was inadequate'; (2) 'the inadequate training policy was a 'moving force' in causing a violation of the [plaintiffs'] rights'; and (3) the City was deliberately indifferent in adopting its training policy.'" *Livezey v. the City of Malakoff*, 657 F. App'x 274, 278 (5th Cir. 2016) (quoting *Valle*, 613 F.3d at 544).

Normally, to show deliberate indifference in the failure-to-train context, a plaintiff may allege that the municipality had "[n]otice of a pattern of similar violations," which were "fairly similar to what ultimately transpired." *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010). "Alternatively, a plaintiff may allege deliberate indifference if the specific injury suffered is a 'patently obvious' or 'highly predictable' result of inadequate training." *Saenz v. City of El Paso*, 637 F. App'x. 828, 832 (5th Cir. 2016) (citation omitted).

Based on those standards, Launza's failure-to-train claim fails for multiple reasons. First, he has not pleaded an underlying constitutional violation. His assertion that officers had a duty to obtain his consent before

arresting him appears to be based upon his supposed status as a sovereign citizen and is patently frivolous. Nor, as discussed below, has he stated a claim for an unreasonable weapons frisk.

Second, Launza has not specified how, exactly, the City of Mesquite's training program was defective, which is fatal to his claim. *See Roberts v. City of Shreveport*, 397 F.3d 298, 293 (5th Cir. 2005) (citing B*enavides v. Cty. of Wilson*, 955 F.2d 968, 973 (5th Cir. 1992)). And third, he has not pleaded deliberate indifference by alleging a pattern of similar incidents. *See Saenz*, F. App'x at 832 (citations omitted). Launza's failure to train claim against the City of Mesquite is meritless and should be dismissed.

D.    <u>*Heck v. Humphrey* bars some of Launza's claims, while the remainder fail on the merits.</u>

Launza's claims relate mostly to his arrests and convictions. In *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), the Supreme Court unequivocally stated:

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, [footnote omitted] a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

*Heck*, 512 U.S. at 486-87.

"Consequently, 'a plaintiff's claim is *Heck*-barred despite its theoretical compatibility with his underlying conviction if specific factual allegations in the complaint are necessarily inconsistent with the validity of the conviction.'" *Daigre v. City of Waveland, Miss.*, 549 F. App'x 283, 286 (5th Cir. 2013) (quoting *Bush v. Strain*, 513 F.3d 492, 498 n.14 (5th Cir. 2008)) (further citations omitted).

In the Fifth Circuit, *Heck's* favorable-termination requirement applies in actions in which the plaintiff is no longer confined. *See, e.g., Randell v. Johnson*, 227 F.3d 300, 301 (5th Cir. 2000) (holding unequivocally that § 1983 claimants who could no longer seek habeas relief because they were no longer confined must still comply with *Heck's* favorable-termination requirement); *Black v. Hathaway*, 616 F. App'x 650, 654 (5th Cir. 2015) ("[T]he application of the favorable-termination rule after a prisoner's release remains unsettled. *Muhammad* [*v. Close*, 540 U.S. 749 (2004),] failed to effect a change in the law that would allow this panel to revisit the court's decision in *Randell.* Therefore, Black's argument that *Heck* does not bar his § 1983 suit is unavailing.").

Here, Launza does not allege that his convictions have been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 486-87. Thus, to the extent that Launza's claims are inconsistent with the validity

14

of his convictions, *Heck* bars his claims—even if he is no longer confined. *See, e.g., Jackson v. Vannoy*, 49 F.3d 175, 177 (5th Cir. 1995) (dismissing claim as barred by *Heck* on a motion to dismiss where the plaintiff did not allege that "any revocation proceeding has been reversed, expunged, set aside by a state court, or called into question by a federal court's issuance of a writ of *habeas corpus*"); *Robinson v. Salmeron*, 2020 WL 1673184, at \*2 (S.D. Tex. Apr. 2, 2020) (dismissing claims of unlawful disciplinary conviction as *Heck*-barred, noting that, "because he does not allege that the conviction has been set aside, his section 1983 claims and request for monetary damages are barred by *Heck*..."); *Robinson v. Bureau of Prisons*, 2012 WL 6652772, at \*3 (E.D. Tex. Nov. 12, 2012), *rec adopted*, 2012 WL 6652646 (E.D. Tex. Dec. 20, 2012) (dismissing plaintiff's claim for failure to state a claim where *Heck* applied, and the prisoner failed to "allege or demonstrate" that he challenged his conviction through a writ of *habeas corpus* or that his conviction was invalidated).

### i.   *First Amendment Claim*

Launza appears to claim that John violated his First Amendment rights to "peacefully protest" when he put his hands on his body to prevent him from recording and denied him his legal right to object to John's actions. (ECF No. 3 at 10.) Although the exact contours of such a First Amendment violation are unclear, to the extent that Launza is claiming that his refusal to identify himself to John or his resistance to an arrest or search is protected

protest activity, such claims are *Heck*-barred, as they would undermine his conviction by suggesting that the conduct leading to his arrest was protected under the First Amendment. *See Mitchell v. Morton County Sheriff Kyle Kirchmeier*, 2020 WL 8073625, at \*13 (D.N.D. Dec. 10, 2020) ("If the Court were to find in this case that [the plaintiff] was lawfully exercising his rights when he was arrested, this would necessarily invalidate the state-law proceedings wherein officers had probable cause to charge him with a trespass and obstruction of a government function for the same exact incident. On this basis, his claims are *Heck*-barred.").

And to the extent that Launza alleges his arrest was in retaliation for the lawful exercise of his First Amendment rights, the claim fares no better. Such First Amendment retaliation claims require the plaintiff to "plead and prove the absence of probable cause for the arrest." *Nieves v. Barlett*, 139 S. Ct. 1715, 1724 (2019)). Courts routinely find such claims to be *Heck*-barred when they relate to an arrest that has not been overturned, and this Court should do the same. *See Poole v. Russell*, 2016 WL 6082041, at \*4 (W.D. La. Oct. 18, 2016) ("Where a plaintiff was arrested for crimes of which he was ultimately convicted, *Heck* bars recovery for free speech retaliation because the conviction necessarily implies that there was probable cause for the arrest.") (citation omitted).

### ii.   *False Arrest Claims*

Launza's false arrest claims also undermine the validity of the conviction because they imply that John lacked the probable cause to arrest Launza in the first place. *See Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir. 1995) (noting that the proof necessary to establish a false arrest claim—that there was not probable cause to arrest on charge—would necessarily demonstrate the invalidity of the conviction for purposes of *Heck*); *see also Joiner v. Smith*, 69 F.3d 536, 539 (5th Cir. 1995) (holding that, "to prove that the arrest was an unreasonable seizure, [the plaintiff] must demonstrate that [the officer] lacked probable cause to arrest for either charge, which would demonstrate the invalidity of [the plaintiff's] convictions for obstructing traffic and disorderly conduct"). Launza's false arrest claims should be dismissed accordingly as *Heck*-barred.

### iii.   *Excessive Force Claims*

Launza also appears to assert an excessive force claim against John, asserting that, when an arrest is unlawful, any force used to effectuate it is excessive. (*See* ECF No. 3 at 11.) Whether *Heck* bars this claim is less clear. "[T]he Fifth Circuit has consistently held that where a plaintiff has been convicted of resisting arrest, and he later asserts in his § 1983 suit that he did not resist arrest and that the arresting officers used excessive force against him, his suit is barred by *Heck*." *Garcia v. Dallas Police Dep't*, 2013 WL 5433510, at *2 (N.D. Tex. July 29, 2013), *rec. accepted* 2013 WL

5434165 (N.D. Tex. Sept. 27, 2013) (citing *Arnold v. Slaughter*, 100 F. App'x 321, 323 (5th Cir. 2004) (holding that a plaintiff's excessive force claim was *Heck*-barred where the plaintiff alleged that he did nothing wrong but was nevertheless attacked for no reason); *Deleon v. City of Corpus Christi*, 488 F.3d 649, 656-57 (5th Cir. 2007) (holding that *Heck* barred an excessive force claim where the plaintiff claimed that he did not resist arrest) (further citations omitted). But here, Launza does not dispute that he resisted arrest. So, the rationale of cases like *Arnold* is inapplicable.

But even if *Heck* does not bar Launza's excessive force claim, his allegations are nevertheless insufficient. To state a claim for excessive force, a plaintiff must allege "(1) an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable." *Spann v. Rainey*, 987 F.2d 1110, 1115 (5th Cir. 1993) (internal quotations omitted). Further, to state a claim for excessive use of force, the plaintiff's asserted injury must be more than *de minimus*. *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2005)

Launza, however, alleges no injury—much less an injury above the *de minimus* threshold— from the allegedly excessive force. This precludes his excessive force claim, which should be dismissed. *See Mohamed for A.M. v. Irving Independent School District*, 300 F.Supp.3d 857, 891 (N.D. Tex.

2018) (dismissing excessive force claim where the plaintiff alleged no injury in connection with the excessive force claim) (citation omitted).

### iv.    Unreasonable Search Claims

Launza appears to present two unreasonable search claims—one predicated on John's supposedly-illegal weapons frisk and another based upon the Defendant officers' search of his pockets following his arrest. (*See* ECF No. 3 at 10.) The Fourth Amendment generally requires a warrant prior to a search; an exception to the rule, however, allows for a warrantless search conducted incident to a lawful arrest. *See United States v. Ryan*, 415 F.2d 847, 850 (5th Cir. 1969) ("As a general rule, a search and seizure incident to arrest are reasonable if the arrest is lawful and the search is incident to the arrest in purpose, time, scope and place.") (citing *Preston v. United States*, 376 U.S. 364 (1964)).

Here, Launza claims that Defendant officers violated his Fourth Amendment rights by going through his pockets after he was arrested. (*See* ECF No. 3 at 7.) ("I was placed in arm restraints beyond my consent. The officers collectively, unlawfully searched my body by going though my pockets.") But this search can be justified assuming that the arrest was lawful. Thus, to find in Launza's favor on this unreasonable search claim, the Court would have to find that his arrest was not lawful, therefore calling the validity of his conviction into question. *Heck* forbids such a result, so any

unreasonable search claim premised upon the search of Launza's person following his arrest should be dismissed pursuant to *Heck*.

The unreasonable search claim premised upon the weapons frisk presents a closer issue. It does not appear that *Heck* bars this claim because the allegations do not necessarily imply the invalidity of Launza's convictions. This search happened prior to Launza's arrest, so it was not pursuant to a lawful arrest. And Launza does not allege, for example, that the frisk uncovered evidence that was later used to convict him. Nor does the resisting arrest, search, or transportation charge depend upon the legality of the underlying search or arrest. *See* TEX. PENAL CODE ANN. § 38.03. ("It is no defense to prosecution under this section that the arrest or search was unlawful."). Thus, finding in Launza's favor on the unreasonable-weapons-frisk claim would not necessarily undermine his conviction for resisting, arrest, search, or transportation because even if the weapons frisk was unlawful, he could still be prosecuted for resisting.[3] The undersigned accordingly concludes that *Heck* does not bar Launza's unreasonable-frisk claim.

---

[3] The failure-to-identify offense does assume a lawful arrest. But if Launza's resistance to the weapons frisk brought on the resisting-search arrest, and then he subsequently refused to identify himself, leading to the failure-to-identify charge (which, on the facts presented is the most likely sequence upon which the charges are based), logically, a finding that the initial search was unlawful would not necessarily undermine the conviction.

Turning to a substantive analysis of the unreasonable-frisk claim, when John announced that he was going to pat down Launza, the encounter lost is consensual essence and became a Fourth Amendment seizure. *United States v. Monsivais*, 848 F.3d 353, 358 (5th Cir. 2017) ("Under the principles established by the Supreme Court, it is undisputed that Deputy Baker effectively seized Monsivais when he announced that he was going to pat him down . . .") (citations omitted).

To properly effectuate a weapons frisk, the officer must have reasonable suspicion that criminal activity is afoot and reasonable, individualized suspicion that the suspect is armed and dangerous. *See United States v. McKinney*, 980 F.3d 485, 490 (5th Cir. 2020) (citing *United States v. Hill*, 752 F.3d 1029, 1033 (5th Cir. 2014); *United States v. Michelletti*, 13 F.3d 838, 840 (5th Cir. 1994) (*en banc*) (discussing *Terry*, 392 U.S. 1; *Maryland v. Buie*, 494 U.S. 325, 334 n.2 (1990)).

"Reasonable suspicion must be supported by particular and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant an intrusion." *Michelletti*, 13 F.3d at 840. Reasonable suspicion exists if the police officer can point to specific and articulable facts indicating that criminal activity is occurring or is about to occur. *United States v. Alvarado-Zarza*, 782 F.3d 246, 249 (5th Cir. 2015) (citation omitted). The "level of suspicion the standard requires is 'considerably less than proof of wrongdoing by a preponderance of the

evidence,' and 'obviously less' than is necessary for probable cause . . . " *Navarette v. California*, 572 U.S. 393, 397 (2014) (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). "And the suspicion need not relate to a particular crime; it is sufficient to have reasonable suspicion 'that criminal activity may be afoot.'" *United States v. Pena-Gonzalez*, 618 F. App'x 195, 198 (5th Cir. 2015) (quoting *United States v. Pack*, 612 F.3d 341, 356 (5th Cir. 2010)). Finally, the issue of reasonable suspicion is a legal one for the Court's determination when the underlying facts are not in dispute. *See United States v. Ibarra-Sanchez*, 199 F.3d 753, 758 (5th Cir. 1999).

Against those standards, the Court finds that the facts, as pleaded by Launza, could allow John to form reasonable suspicion that criminal activity was afoot. Specifically, Launza's allegations show that he was evasive and belligerent, refusing to answer legitimate questions, such as whether he had a 24-hour fitness club membership, which could be pertinent to a trespass-related inquiry. *See United States v. Smith*, 594 F.3d 530, 542 (6th Cir. 2010) (noting that, while a suspect's refusal to answer or listen does not, by itself, justify a reasonable suspicion of criminal activity, it can be a factor that, together with other factors, supports a finding of reasonable suspicion); *see also United States v. Spears*, 636 F. Appx. 893, 903 (5th Cir. 2016) ("[E]vasive behavior is a pertinent factor in determining reasonable suspicion," but because "such behavior 'is not necessarily indicative of wrongdoing,'" the "context is key.") (further citations omitted). Launza was

also hostile and combative, ordering John to contact his supervisor, ordering John to "come over to [him]," and insisting upon engaging with John as opposed to remaining in his vehicle. This also supports potential reasonable suspicion—especially considering that the encounter happened at 2:00 a.m., with Launza parked in the spot furthest from the building. *See United States v. Garcia*, 751 F.3d 1139, 1144 (10th Cir. 2014) (noting, in case in which the officer had a previous encounter with the suspect that necessitated the use of a Taser, that "[t]he reasonable suspicion test is broad enough to include consideration of aggressive actions—including actions without weapons . . ."); *see also United States v. Conner*, 699 F.3d 1225, 1231 (10th Cir. 2012) ("Another factor in determining the existence of reasonable suspicion is the time of night.") (citing *Michigan v. Long*, 463 U.S. 1032, 1050) (1983) (*Gallegos v. City of Colorado Springs*, 114 F.3d 1024, 1029 (10th Cir. 1997)).

John's weapon frisk was also reasonable. Again, context matters: according to Launza's allegations, John and Launza's interaction occurred at 2:00 a.m. in a parking area located furthest from the building. At the time of the initial frisk, John was the only officer on scene. (*See* ECF No. 3 at 7.) A reasonable officer in John's position could have been intimidated by Launza's aggressive demeanor. And while, based solely on Launza's allegations, John might not have possessed articulable information indicating that Launza was armed, he possessed information that a reasonable officer could find indicative of hostility. John did not need to

extend the encounter to obtain more facts indicating that Launa was armed before initiating a weapons frisk. Indeed, in *Terry* itself, the court noted that a police officer "need not be absolutely certain that the individual is armed" because "the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry*, 392 U.S at 27.; *see also United States v. Brown*, 232 F.3d 589 (7th Cir. 2000) (finding protective pat down reasonable where, although there were no specific facts indicating that the suspect was armed, there was ample reason to view the uncooperative and volatile suspect, as dangerous, so officer acted reasonably in conducting pat down); *Adams v. Williams*, 407 U.S. 143, 146 (1972)) (stating that "the purpose of the frisk is to afford an officer 'the opportunity to protect himself from attack by a hostile suspect.'").

Accordingly, the Court should dismiss Launza's unreasonable-weapons-frisk claim.

> *v.   Remaining claims: fabrication of police report and perjured testimony*

Last, Launza claims that John fabricated his police report to justify his unlawful arrest and provided perjured testimony at trial leading to Launza's convictions. (*See* ECF No. 3 at 12, 14). But because success on these claims would undermine the validity of Launza's convictions, *Heck* bars them as well. *See Bailey v. Willis*, 2018 WL 3321461, at *6 (E.D. Tex. Jan. 11, 2018),

*rec. adopted*, 2018 WL 2126476 (E.D. Tex. May 8, 2018) (finding that *Heck* barred claim that affidavits for search warrants supporting arrest were forged); *Conlan v. King, et al.*, 682 F. App'x 345 (5th Cir. 2017) (claim of false arrest, forced self-incrimination, and illegal seizure of evidence barred by *Heck*); *Villegas v. Galloway, et al.*, 458 F. App'x 334, 337 (5th Cir. 2012) (civil rights clams such as ineffective assistance of counsel, use or perjured testimony and fabricated evidence, and suppression of favorable evidence are barred by *Heck*); *Castellano v. Fragozo*, 352 F.3d 939, 959-60 (5th Cir. 2003) (claims of manufactured evidence and perjured testimony do not accrue until after the state court dismisses underlying criminal action).[4]

### Leave to Amend

Ordinarily, a *pro se* plaintiff should be granted leave to amend his complaint prior to dismissal. However, leave to amend is not required when the plaintiff "has already pleaded his 'best case.'" *Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009). As discussed herein, Launza's claims are fatally infirm; thus, granting leave to amend under these circumstances would be futile and cause needless delay.

---

[4] It is unclear whether Launza is also trying to assert a malicious prosecution claim. He does use this term in his complaint. (*See* ECF No. 3 at 13.) To the extent that he is raising such a claim, it is not cognizable in this Circuit. *See Moore v. Blanco*, 255 F. App'x 824 (5th Cir. 2007).

## Conclusion

The Court should DISMISS Launza's complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) as frivolous, or, alternatively, for failure to state a claim upon which relief can be granted. To the extent that a judgment in Launza's favor would necessarily imply the invalidity of his convictions, Launza's claims should be dismissed with prejudice to their being asserted again until the *Heck* conditions are met. All other claims should be dismissed with prejudice for all purposes.

SO RECOMMENDED.

October 8, 2021.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).